IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33671-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHERRYL ANN GRANT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Cherryl Grant appeals from five Okanogan County felony drug convictions, arguing the evidence was insufficient to tie her to her son's drug sales operation. The evidence permitted the jury to conclude she was actively involved. We affirm.

FACTS

This action arose from a series of three drug sales James Grant, son of Cherryl Grant, made to a police informant on the property where the Grants lived. Cherryl Grant lived with her boyfriend, Brian Morris, who "owned"[1] the property. They lived in a house on the land, while James Grant stayed in a nearby outbuilding known as "the bunkhouse."

Anyone desiring to purchase drugs from James Grant would meet him at the bunkhouse. He would leave to obtain drugs from the house, but could only make the sale

---

[1] The land was registered in the names of Dennis and Peggy Morris, but Ms. Grant identified her boyfriend as the owner.

when the defendant was present in the house. The informant was the primary witness for the State and described the three transactions for the jury. In each instance, James Grant would go to the house, Cherryl Grant would come out to see who was present, and then she would return to the house and James Grant would eventually deliver the drugs.

The first sale occurred on July 24, 2014, when the informant obtained methamphetamine during a controlled buy. Ms. Grant's vehicle was at the property at the time the sale occurred. A second controlled buy for methamphetamine was conducted on July 31. On this occasion, the informant had to wait to purchase the drugs. James told him they must wait for Ms. Grant to return home.

The third and final controlled buy occurred on August 19. During a recorded telephone call to set up the transaction, James told the informant that he would call Ms. Grant and requested the informant wait for her to return home. The third transaction, which included a discussion about future transactions for additional drugs that would be available when Ms. Grant returned from a trip to Spokane, was also recorded.

The controlled buys served as a basis for a search warrant for the property. Both David and Cherryl Grant were present in the house when the warrant was served later on August 19. Officers found methamphetamine near Ms. Grant, which she identified as hers. They also discovered a ledger, unused plastic "baggies," and a digital scale. The money from the controlled buys was found in Ms. Grant's purse.

2

The prosecutor ultimately charged Ms. Grant with three counts of delivery of a methamphetamine, one count of possession of methamphetamine with intent to deliver, and one count of unlawful use of a building for drug purposes. The matter ultimately proceeded to jury trial.

James Grant testified on his mother's behalf and attempted to claim responsibility for the crimes, telling jurors that his mother had no knowledge of his activities. He told jurors that he kept the drugs in her house for safekeeping without her knowledge, telling her only that he had valuables in her house. He testified that he paid his rent to his mother from the buy money.

The jury, however, rejected that testimony and convicted Ms. Grant on all five counts. She timely appealed to this court.

## ANALYSIS

This appeal raises the sufficiency of the evidence to support the verdicts as the sole issue in the appeal.[2] Ms. Grant claims that there were different deficiencies in each count of the State's case. Properly considered, the evidence supported the jury's decision.

---

[2] Ms. Grant also filed a statement of additional grounds raising two issues. She first claims that the testimony that she would go to Spokane to obtain more drugs should not be believed. However, this court is not permitted to make our own credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). She also argues that the ledger is not a record of drug transactions. The exhibit is not in our record and cannot be reviewed. Again, however, we cannot reweigh the evidence and substitute our opinion about the ledger for that of the jury. These issues are without merit.

This issue is reviewed pursuant to well settled standards. We review an evidentiary sufficiency challenge to see if there was evidence from which the jury could have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Id*. at 221. Credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Circumstantial evidence is as reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

To convict a defendant of delivery of a controlled substance, the State must prove that she knowingly delivered a controlled substance. RCW 69.50.401(1). Ms. Grant contends that there is insufficient evidence to show her involvement in the three drug sales James made to the informant. She was charged as an accomplice to those offenses, which permitted the jury to convict her if she was an active participant by aiding the sales ventures with the knowledge that she was promoting the activity. RCW 9A.08.020(3)(a)(ii).

Both direct and circumstantial evidence supported the delivery convictions. The informant's testimony established that Ms. Grant had to be present for the sales to occur and that she was on the property every time the deliveries occurred. While the jury was free to credit James's explanation that he could only retrieve the unknown valuables when she was home, it was not required to do so. The presence of the buy money in her purse, as well as

4

her presence when all sales occurred, permitted the jury to infer that she was the source of the controlled substances. The evidence supported the three delivery convictions.

To convict a defendant of possession with intent to deliver or manufacture, the State must prove that she possessed a controlled substance with the intent to deliver the controlled substance. RCW 69.50.401(1). Ms. Grant argues that the methamphetamine in the house was not possessed for commercial purposes. The presence of the drug, scales, and packaging materials in her house, along with the possession of the buy money in her purse, strongly support the inference that she was actively delivering the controlled substance. The jury was free to believe the methamphetamine in her possession was part of an on-going commercial venture rather than simply there for her personal use. Again, the evidence supported the jury's determination that she possessed the drug with the intent to deliver it.

To convict a defendant of unlawful use of a building for drug purposes as charged in this case, the State needed to prove that she controlled a building that she made available for drug related purposes. RCW 69.53.010(1). Ms. Grant argues the evidence does not support the control element of this statute. Once again, we believe the jury could find otherwise. James's explanation that he used the buy money to pay rent suggests that she had a significant degree of control over the bunkhouse. The convictions on the delivery counts support the view that she knew James was using that property for selling drugs and assisted him in doing so. Together, this evidence permitted the jury to conclude that she permitted the unlawful use of property under her control for drug related purposes.

5

No. 33671-9-III
*State v. Grant*

The evidence supported each of the five convictions. The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.

6