

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RICHARD and SARAH TAMBURELLO, | ) | No. 38617-1-III |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SHORELINES HEARINGS BOARD; | ) | |
| DEPARTMENT OF ECOLOGY; and | ) | |
| YAKIMA COUNTY, WASHINGTON, | ) | |
| | ) | |
| Respondents. | ) | |

PENNELL, J. — Richard and Sarah Tamburello appeal a shoreline violation penalty imposed in relation to the deposit of almost 300 cubic yards of gravel on their property near the Naches River. The penalty was originally imposed by the Department of Ecology and later affirmed in part by the Shorelines Hearings Board (SHB). On appeal to this court, the Tamburellos assert legal and factual errors.

We disagree with the Tamburellos' legal challenges. The SHB correctly determined that Ecology's penalty order was legally valid and that review of the penalty order (as opposed to preceding enforcement orders) did not impair Tamburellos' ability to defend their case or present evidence.

As to the factual challenges, substantial evidence supports the SHB's findings that the Tamburellos violated shoreline management regulations. However, we reverse the SHB's final penalty assessment as it failed to fully account for the Tamburellos' mitigating circumstances.

FACTS

Richard and Sarah Tamburello located a piece of property along the Naches River that they wanted to buy to use for camping. The property was undeveloped but included an overgrown access drive and circular parking area for recreational vehicles, which they hoped to improve if they purchased the land. The property is located in an area designated as a floodway and channel migration zone. It is subject to routine flooding events. It had an assessed value of $18,600.

Recognizing the property might be subject to regulation due to its proximity to the river, the Tamburellos sought the advice of Yakima County regarding the improvements they wished to make to the driveway. Unfortunately for the Tamburellos, the County inaccurately informed them there was no necessary permitting for the described work on the property. The parcel was actually subject to the Shoreline Management Act of 1971 (SMA), chapter 90.58 RCW, and the Yakima County Regional Shoreline Master Program (SMP), Title 16D Yakima County Code.

The Tamburellos purchased the property in January 2013 and in May they deposited 30 truckloads of gravel on the area they believed to be the driveway and RV parking area. A Washington Department of Fish and Wildlife biologist witnessed the gravel delivery and reported it to Yakima County. The next day the County posted a stop work order on the Tamburellos' driveway, instructing them to obtain a floodplain development permit and shoreline permit. The Tamburellos were surprised by the order and requested a meeting with the County. The County conducted a site visit and took multiple photographs of the Tamburellos' property and maintenance activities.

During 2013 and 2014, the Tamburellos, Yakima County, and the Department of Ecology attempted to resolve their issues. The parties failed to reach an agreement.

In 2015, Ecology issued a notice of correction, advising the Tamburellos they had illegally deposited fill in a floodway, a wetland buffer, and below the ordinary high water mark (OHWM). The notice outlined two pathways for compliance: (1) submission of a no-rise certification and related permits or (2) a restoration plan. The Tamburellos attempted to achieve compliance though submitting a no-rise certification. Ecology refused to issue the certification because it showed a small increase to water surface elevations. The Tamburellos did not attempt the second pathway for compliance.

In November 2016, Ecology issued an enforcement order instructing the Tamburellos to cease and desist from all further filling or vegetation removal. It also instructed the Tamburellos to meet a correction condition, requiring a shoreline restoration/mitigation plan that would restore the site to pre-fill conditions. The enforcement order informed the Tamburellos that noncompliance could result in further actions by Ecology, including the issuance of civil penalties of up to $1,000 per day.

Ecology subsequently rescinded the enforcement order in January 2017 based on its belief the order needed to be accompanied with appeal instructions. Ecology then immediately issued an identical order containing appeal instructions.

The Tamburellos appealed the enforcement order to the SHB. The SHB dismissed the appeal for lack of jurisdiction, pointing out that enforcement orders do not carry appeal rights. In other words, there had been no need for Ecology to rescind the original enforcement order. The Tamburellos did not take additional steps to comply with the enforcement order. Ecology did not rescind the second order.

In January 2018, Ecology issued the Tamburellos a $16,000 penalty for violating certain terms and conditions of the enforcement order. The penalty order stated it was based on the illegal fill and the failure to satisfy the correction condition. The notice of penalty advised the Tamburellos of their appeal rights.

The Tamburellos appealed the penalty order and the enforcement order to the SHB. The SHB again ruled it did not have jurisdiction to review the enforcement order. However, it did have authority to review the penalty and the facts underlying the enforcement order that formed the basis for the penalty.

The SHB conducted a four-day evidentiary hearing and heard testimony from both parties. Ecology's witnesses testified that there was a wetland on the Tamburellos' property, that the gravel had been dumped below the OHWM of the Naches River, and that the Tamburellos had cleared vegetation in preparation for the gravel. The Tamburellos presented testimony from themselves and their son. They claimed they had not cleared any vegetation beyond the preexisting driveway and RV parking area and that they had not placed fill in a wetland or below the OHWM.

The SHB found the Tamburellos had committed shoreline violations and that a penalty was justified. However, the SHB reduced the penalty to $8,000 based on mitigating circumstances, provided the Tamburellos submit a restoration plan within 30 days from the date of the decision. The Tamburellos petitioned for review of the SHB's order to Yakima County Superior Court pursuant to Washington's Administrative Procedure Act, chapter 34.05 RCW. RCW 34.05.514(1)(c). On stipulation of the parties, the superior court certified the case for direct review by this court. RCW 34.05.518(1)(a).

No. 38617-1-III
*Tamburello v. Shorelines Hr'gs Bd.*


ANALYSIS

*Standard of review*

Relief from an agency order may be granted on constitutional, legal, or factual

grounds. RCW 34.05.570(3)(a), (d), (e). Constitutional and legal issues are reviewed

de novo; however, we accord substantial weight to to an agency's interpretation of the

law within its area of expertise. *Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720,

728, 730, 818 P.2d 1062 (1991). An agency's factual findings are reviewed for substantial

evidence, which is evidence "of sufficient quantity to persuade a fair-minded person of

the truth or correctness of the agency order." *Hahn v. Dep't of Ret. Sys.*, 137 Wn. App.

993, 939, 155 P.3d 177 (2007).

*1. Legal challenges*

    *a. SHB's authority to review Ecology's actions*

The Tamburellos argue that restrictions on the SHB's authority to review

enforcement orders impaired their ability to defend against the penalty imposed by

Ecology. We disagree.

The Department of Ecology has authority to issue cease and desist orders

(also known as enforcement orders) to individuals who have violated the permitting

requirements of the SMA. RCW 90.58.210(3); WAC 173-27-270. A cease and

desist order may be accompanied by a regulatory penalty. WAC 173-27-270(1)(b).[1]

An individual incurring a regulatory penalty may file an appeal with the SHB.

RCW 90.58.210(4); WAC 173-27-290. There is no statutory or regulatory authority

authorizing the SHB to review cease and desist orders in and of themselves. *Bandy*

*v. Jefferson County*, No. 89-8, at 3-4 (Wash. Shorelines Hr'gs Bd. May 5, 1989). But

the SHB may review the terms of an order when the order gives rise to a penalty that is

the subject of an appeal. *Id*.

The procedures utilized by the SHB in this case comported with the foregoing

statutory and regulatory authority. The SHB properly dismissed the Tamburellos'

initial appeal on the basis that it involved only a cease and desist order. Once a penalty

order was issued, the SHB gained authority for review under RCW 90.58.210(4) and

WAC 173-27-290. The SHB's authority to review Ecology's penalty necessarily required

assessing the terms of cease and desist order that were referenced the notice of penalty.

*Brandy* at 3-4. Indeed, the SHB addressed the merits of Ecology's allegations against the

Tamburellos along with the Tamburellos' affirmative defenses and determined that the

---

[1] The amount of the penalty shall not exceed $1,000 per violation. RCW 90.58.210(2); WAC 173-27-280. "Each permit violation or each day of continued development without a required permit shall constitute a separate violation." RCW 90.58.210(2).

Tamburellos committed in violation which warranted a penalty. Contrary to the

Tamburellos' allegations, the SHB did not avoid the merits by resorting to a doctrine

such as collateral estoppel.[2]

Further, the cease and desist order with erroneous right of appeal instructions did

not somehow invalidate the subsequent order. To the extent the Tamburellos claim this

misadvice violated their due process rights, they have not shown any prejudice. This

case would be different if the Tamburellos had been advised of no right to appeal where

such a right in fact existed. In such a situation, due process would require corrective

action as reflected in the cases cited in the Tamburellos' brief. *See, e.g.*, *Gardner v.*

*Pierce County Bd. of Comm'rs*, 27 Wn. App. 241, 243-44, 617 P.2d 743 (1980). But here,

the Tamburellos were mistakenly advised that they had the right to appeal when they did

not. This mistake was subsequently clarified and when the Tamburellos' right to appeal

ripened, they timely exercised that right. Nothing more was required for due process.

### b. Department of Ecology's authority to issue penalty

The Tamburellos contend the Department of Ecology lacked authority to issue a

---

[2] The Tamburellos claim that they were precluded from introducing evidence under an in limine ruling. However, the only evidence excluded by the SHB through an in lime ruling pertained to evidence of settlement negotiations, which was properly excluded under ER 408. Clerk's Papers at 48-51.

penalty without joint participation by the County. This is not correct.

Ecology has independent authority to issue penalties for violations of the SMA when it satisfies regulatory prerequisites. *See* WAC 173-27-280(1)-(2). Relevant here, Ecology may independently issue a penalty

> after the following information has been provided in writing [to the individual or business believed to be in violation] though a technical assistance visit or a notice of correction:
> (a) A description of the condition that is not in compliance and a specific citation to the applicable law or rule;
> (b) A statement of what is required to achieve compliance;
> (c) The date by which the agency requires compliance to be achieved;
> (d) Notice of the means to contact any technical assistance services provided by the agency or others; and
> (e) Notice of when, where, and to whom a request to extend the time to achieve compliance for good cause may be filed with the agency.
> Furthermore, no penalty shall be issued by the department until the individual or business has been given a reasonable time to correct the violation and has not done so.

WAC 173-27-280(2).

Ecology claims it complied with WAC 173-27-280(2) by providing the Tamburellos a notice of correction. We agree.

The record is clear that Ecology issued a notice of correction to the Tamburellos before issuance of the enforcement order or the subsequent penalty. The notice of correction met all the criteria set by WAC 173-27-280(2) and the Tamburellos do not

claim otherwise. The Tamburellos appear to argue that Ecology lacked authority to issue a

penalty because the penalty did not explicitly refer to the notice of correction. However,

the Tamburellos cite no authority for this claim. Where no authority is cited, we assume

none exists. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193

(1962).

*2. Factual challenges*

 *a. SHB's findings as to shoreline violations*

 As relevant to the penalty assessment, the enforcement order identified three

shoreline violations: unauthorized deposit of fill (1) within a floodway, (2) below the

OHWM, and (3) within a wetland. The Tamburellos contend substantial evidence does

not support the SHB's findings as to these violations.[3] We disagree.

 The primary violation by the Tamburellos pertained to the unauthorized deposit of

fill in a floodway. This claim is essentially undisputed. The Tamburellos do not deny they

dumped 296 cubic yards of gravel fill on their property, which is in the Naches River

floodway. The fill caused a small but measurable rise to water surface elevations. The

Tamburellos suggest they were given permission to deposit the fill. However, the only

---

 [3] The assignments of error set forth in the Tamburellos' opening brief do not
challenge the legal basis for these violations.

specific permission given to the Tamburellos was to distribute fill that had already been deposited. There is no evidence the Tamburellos were given permission to deposit the fill in the first place. While the Tamburellos assert they were told by Yakima County that no permit was required to deposit fill, erroneous advice is not the same thing as permission and the Tamburellos do not appear to claim otherwise. Substantial evidence supports the SHB's finding as to the first shoreline violation.

As for the second and third violations, Ecology presented several witnesses who testified they found sedimentary fill placed in areas determined to be a wetland and below the OHWM. There was only limited testimony regarding gravel fill being placed below the OHWM and there was no testimony that gravel fill was located in a wetland. But Ecology's witnesses explained that the definition of fill extends to native soil that has been moved or manipulated. The testimony regarding fill located in the wetland and below the OHWM provided circumstantial evidence that the Tamburellos, as land owners, were responsible for placement of the fill.

The Tamburellos disputed Ecology's claims regarding fill in a wetland and below the OHWM. Unlike Ecology's witnesses, the Tamburellos' were able to provide direct testimony denying they had ever deposited fill within a wetland or below the OHWM. While the Tamburellos' testimony was forceful evidence, it did not eliminate the

11

circumstantial evidence produced by Ecology. "In determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than direct evidence." *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Sufficient evidence supports the SHB's factual findings. As a result, those findings will not be disturbed on appeal.

### b. SHB's findings as to the enforcement order violation

The Tamburellos next argue they did not violate the enforcement order's corrective action provisions that required a revegetation plan. According to the Tamburellos, there was no area requiring revegetation, so they could not have violated this provision.

The Tamburellos misread the applicable corrective action provisions. The provisions in question did not simply require revegetation. The order required the Tamburellos to submit a restoration plan that addressed things such as revegetation and removal of the illegal fill. The Tamburellos could have complied with the corrective action provisions by submitting a plan stating no revegetation was necessary. They also could have submitted a plan addressing the 296 cubic yards of illegal fill. But the undisputed evidence is that the Tamburellos never attempted to submit a restoration plan. Compliance with the corrective action provisions was not impossible or unreasonable. Substantial evidence supports the SHB's findings.

*c. SHB's findings regarding the reasonableness of the penalty*

The Tamburellos challenge the reasonableness of the SHB's penalty in light of the facts of their case. Ecology asserts the penalty, as modified by the SHB, was within Ecology's statutory authority and was supported by substantial evidence.[4]

We accord substantial deference to an agency's determination of an appropriate penalty. *See Honeywell v. Dep't of Ecology*, 2 Wn. App. 2d 601, 615, 413 P.3d 41 (2017). When reviewing the reasonableness of a penalty, the SHB considers (1) the nature of the violation, (2) the prior history of the violator, and (3) the remedial actions taken by the penalized party. *Id*. The SHB also considers whether the agency, in setting the penalty, considered the circumstances and attempted to select the level of sanction appropriate to change behavior and secure compliance. *Id*.

In reviewing the foregoing factors, the SHB found the Tamburellos' violations were serious and that imposition of a penalty would promote deterrence. We defer to these assessments, as they are adequately supported by the testimony and record.

---

[4] The Tamburellos also challenge the legality of the continuing daily penalty assessment when there was no ongoing development on their property. This argument was not raised to the SHB or in the Tamburellos' opening brief on appeal. It therefore does not warrant review. RCW 34.05.554(1) ("Issues not raised before the agency may not be raised on appeal."); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

The Tamburellos' arguments against the imposition of a penalty focus on their claim that they were innocent property owners. Because we affirm the SBH's finding of violation, these counter arguments fail.

While the SHB found a penalty was appropriate, it also determined that mitigating circumstances warranted reducing the penalty below the amount imposed by Ecology. The SHB found the Tamburellos' "intent was primarily to maintain the infrastructure on their property" and that they might have been confused about their legal obligations because "communication between the government and the Tamburellos was intermittent and incomplete" "due in part to turnover of employees both at Ecology and Yakima County." Clerk's Papers at 1794. Ecology's penalty of $16,000 was "nearly equal to the assessed value of the [Tamburellos'] property." *Id.* Thus, the SHB concluded the Tamburellos' penalty should be reduced by half, to $8,000.

The SHB's assessment of the Tamburellos' mitigating circumstances was appropriate but incomplete. The mitigating circumstances in this case were not limited to communication problems between the County, Ecology and the Tamburellos. The Tamburellos also produced undisputed testimony that before purchasing the property they had been affirmatively misadvised about permitting requirements. According to the Tamburellos, they were told by the County that no permits would be required for clearing

14

debris and laying gravel on the property's preexisting driveways. The Tamburellos claim they never would have purchased the property if they had been provided accurate advice. While the County's erroneous advice may not have excused the Tamburellos' shoreline violations, it was a substantial mitigating circumstance. The SHB should have considered this circumstance in its assessment of the appropriate penalty.

## CONCLUSION

We remand to the SHB with instructions to give full consideration of the Tamburellos' mitigating circumstances, as set forth in this opinion, in assessing a penalty. The agency order is otherwise affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Fearing, J.

15